# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JACOBO ROZO POSSO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **1:19CV906** |
| v. | ) | **1:18CR120-1** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>ORDER AND RECOMMENDATION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

Petitioner Jacobo Rozo Posso, a federal prisoner, has brought a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket Entry 37.) Petitioner pled guilty, pursuant to a plea agreement, to two counts of enticing a minor to engage in a sexual act and one count of possession of child pornography, and was sentenced to 204 months of imprisonment. (Docket Entries 18, 22-23, 34; Minute Entries 6/13/2018 and 10/16/2018.) Petitioner did not file an appeal. (Docket Entry 44, § 8.) Instead, Petitioner filed the instant motion (Docket Entry 37), four supplements (Docket Entries 38-39, 50, 52), and an amended motion[1] (Docket Entry 44) along with an accompanying memorandum (Docket Entry 45). The Government filed a response and an amended response. (Docket Entries 68 and 76.) Petitioner filed a reply (Docket Entry 77), an affidavit (Docket Entry 78), and an exhibit (Docket Entry 79).

---

[1] The Court will grant this motion (Docket Entry 44), which is, more specifically, a motion for leave to amend the original § 2255 motion. The Court has considered all of Petitioner's grounds for relief contained in all of his pleadings and none of them warrant relief.

Petitioner has also filed a number of additional motions which remain pending, including (1) a motion for reconsideration (Docket Entry 51), (2) a motion entitled "Motion to Dismiss the Government's Request for Extension of Time" (Docket Entry 56), (3) a motion entitled "Motion Requesting Expeditious Evidentiary Hearing" (Docket Entry 57), (4) a motion for the appointment of counsel (Docket Entry 59), (5) a motion entitled "Motion Requesting Unredacted Version of the Docket No. 58 and the May 15, 2018 Arraignment as Well as Motion to Place on File the Petitioner's Acting Power of Attorney" (Docket Entry 60), (6) a motion seeking to amend the motion for reconsideration (Docket Entry 62), (7) a motion requesting attorney-client audio-recordings and another motion requesting transcriptions of those recordings (Docket Entries 63-64), and (8) a motion entitled "Motion to Prohibit Non-Party Remote Electronic Access to Certain Documents in the Docket Sheet" (Docket Entry 66). This matter is now ripe for a ruling. *See* Rule 8, Rules Governing § 2255 Proceedings.

## PETITIONER'S GROUNDS

In Ground One, Petitioner contends that he was not arraigned on either of the superseding indictments. (Docket Entry 45 at 6-8.) In Ground Two, Petitioner asserts that his crimes were not committed knowingly, because his minor victims initiated contact with him on a website that requires its users to be at least eighteen years old. (*Id.* at 8-9.) In Ground Three, Petitioner asserts that he was denied effective assistance of counsel because counsel failed "to inform [him about] the superseding indictments," counsel "fraudulently stood in for [his] arraignment on the superseding indictment," and counsel failed to get

2

Petitioner arraigned on the superseding indictments. (Docket Entry 44 at pdf pages 13-15; *see also* Docket Entry 45 at 10.) In Ground Four, Petitioner also asserts counsel failed to file a notice of appeal as requested. (Docket Entry 44 at pdf pages 19-20; Docket Entry 45 at 11.) In Ground Five, Petitioner asserts that counsel "failed to understand the application of the law and the elements as well as the enhancement applications thus causing the petitioner to be unlawfully convicted as well as unlawfully enhanced." (Docket Entry 45 at 11.)

In Ground Six, Petitioner contends that the superseding indictment failed to "allege the essential jurisdictional elements of the facility or means of interstate commerce used by the [P]etitioner for the commission of the offense" and failed to allege "which subsection [Petitioner] violated of the indecent liberties with a child" statute. (Docket Entry 52 at 6.) In Ground Seven, Petitioner asserts that his "convictions were obtained without meeting all scienter mens rea (knowingly elements) and the other essential jurisdictional elements." (*Id.* at 11.) In Ground Eight, Petitioner contends that "[t]he Court lacks subject matter jurisdiction over the convictions for counts 3 and 6," the enticement of a minor counts, because the charged crimes did not occur in this district. (*Id.* at 15.) In Ground Nine, Petitioner contends that "[t]he court lacks subject matter jurisdiction . . . because Possession of Dropbox Hyperlinks [did not amount to] Possession of Child Pornography and . . . is not even a Federal crime punishable by Federal law[.]" (*Id.* at 19.) As explained below, none of these grounds warrant relief.[2]

---

[2] Petitioner's grounds, and his arguments in support of his grounds, are sometimes difficult to follow. They also occasionally overlap. The undersigned has attempted to respond to all of the many variations of Petitioner's claims and sub-claims. To the extent that any have not been specifically discussed, they should still be denied for essentially the reasons set out herein.

3

# DISCUSSION

### a. Petitioner has waived all of his grounds for relief, except for his ineffective assistance of counsel claims.

Under the terms of his plea agreement, except under limited circumstances, Petitioner waived the right to contest his sentence in any post-conviction proceeding. His plea agreement states:

> It is further agreed by and between the United States and the defendant, JACOBO ROZO POSSO, that in exchange for the government's agreement to dismiss the remaining counts of the Superseding Indictment herein, the defendant expressly waives the right to appeal the conviction and whatever sentence is imposed on any ground, including any appeal right conferred by Title 18, United States Code, Section 3742(a), and further to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under Title 28, United States Code, Section 2255, excepting the defendant's right to appeal or collaterally attack based upon grounds of (1) ineffective assistance of counsel, (2) prosecutorial misconduct not known to the defendant at the time of the defendant's guilty plea, (3) a sentence in excess of the statutory maximum, and (4) a sentence based on an unconstitutional factor, such as race, religion, national origin or gender.

(Docket Entry 23 at 8.)

At his change of plea, the Court questioned Petitioner as to his understanding of this waiver and Petitioner indicated that he understood its implications.

> THE COURT: Now, I mentioned that one of the rights you have is you or the Government may have the right to appeal any sentence in your case, but do you understand that in paragraph 5E of your plea agreement you're significantly limiting your appeal rights; that is, in exchange for the Government's agreement to dismiss the remaining counts of the superseding indictment, you're expressly waiving your right to appeal your

4

conviction and sentence on any ground, including any appeal right that's conferred under Title 18 of the U.S. Code, Section 3742(a), and you're further waiving any right to contest your conviction or sentence in any post-conviction proceeding, which we sometimes call a habeas proceeding, including any such proceeding under Title 28 of the U.S. Code, Section 2255, with the exception that you do preserve your right to appeal or collaterally attack based on grounds of ineffective assistance of your lawyer, any misconduct by the prosecutor not known to you at the time of your plea, any sentence that exceeds the statutory maximum, and any sentence based on an unconstitutional factor, such as race, religion, national origin, or gender?

Do you understand that?

THE DEFENDANT: Yes, sir, I understand.

(Docket Entry 54 at 27.) "[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). As a result, Petitioner's first,[3] second, sixth, seventh, eighth, and ninth grounds have been waived.

---

[3] Petitioner's first ground for relief faults the Government, the Court, and counsel for the way his arraignments were purportedly mis-handled. (Docket Entry 45 at 6.) To the extent this is a claim for ineffective assistance of counsel, it fails for the same reasons ground three fails below. To the extent ground one faults the Court or the Government, the argument has been waived and also fails for want of prejudice. The same is true for Petitioner's second ground for relief. To the extent it alleges ineffective assistance of counsel, it fails in light of Petitioner's Rule 11 hearing, which demonstrates he pled guilty knowingly and intelligently and voluntarily to the crimes at issue here. To the extent Petitioner tries to raise additional claims of error by the Court (such as in the way the Court conducted Petitioner's change of plea) in his most recent affidavit (Docket Entry 78 at pdf page 5), his efforts have been waived and are also time-barred.

5

**b. Petitioner's sixth, eighth, and ninth grounds are also time-barred.**

Further, Petitioner's sixth, eighth, and ninth grounds for relief are also time-barred because they were first raised weeks after Petitioner's one-year window to submit a 28 U.S.C. § 2255 motion closed in mid-November of 2019.[4]

More specifically, Petitioner's new claims are subject to the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"). 28 U.S.C. § 2255(f). Under § 2255(f)(1), the limitation period runs from the date when the judgment of conviction became final. Where a defendant files an appeal, finality has been construed to mean when he may no longer seek further review because of (1) the denial of a petition for certiorari to the United States Supreme Court or (2) the expiration of the time for seeking such review. *Clay v. United States*, 537 U.S. 522, 527 (2003). Where no direct appeal is filed, the conviction becomes final when the notice of appeal period expires. *Id.*; Fed. R. App. P. 4(b).

Here, judgment was entered on October 29, 2018. (Docket Entry 34.) The notice of appeal period expired fourteen days later, on November 12, 2018. This means that Petitioner then had until November 12, of 2019 to raise his new claims. However, he did not execute the pleading containing his new claims until December 5, 2019, and those claims were not filed with this Court until December 10, 2019 (Docket Entry 52), almost a month after the expiration of the limitations period. Petitioner's amended claims are not timely

---

[4] Petitioner's seventh ground for relief appears to overlap considerably with his second ground for relief and so the Court will not treat it as time-barred. Nevertheless, both grounds have been waived and also fail on the merits for the reasons described herein.

6

under subsection (f)(1). Only if another subsection gives Petitioner more time to file would his amended claims be timely.[5]

Section 2255(f)(2) requires an unlawful governmental action which prevented Petitioner from filing his § 2255 motion. Petitioner fails to allege that any unlawful governmental action prevented him from filing this motion. Therefore, subsection two does not give Petitioner a longer limitation period.

Section 2255(f)(3) allows the limitation period to run from the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized and made retroactively applicable to cases on collateral review. Petitioner does not allege that he is relying upon any such right as to these proposed new grounds for relief, nor does the Court see how he could. This subsection does not apply.

---

[5] Where claims raised for the first time in an amended motion are not filed within the applicable time limit, the untimely claims are barred by AEDPA unless they "relate back" to claims raised in the original filing. *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000); Fed. R. Civ. P. 15(c). Rule 15(c)(1)(B) provides that an amendment relates back when it "asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). As the Supreme Court stated in *Mayle v. Felix*, in the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. 545 U.S. 644, 664 (2005). Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts." *Id.* With respect to claims of ineffective assistance of counsel, a new claim of ineffective assistance of counsel does not relate back to an earlier asserted claim of ineffective assistance of counsel if the "new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (quoting *Mayle*, 545 U.S. at 650). Here, Petitioner makes no argument that the claims he proposes to add in his supplemental pleading (Docket Entry 52) relate back to his initial § 2255 motion. Moreover, a review of the relevant documents makes it clear that Petitioner's proposed amended claims do not relate back to his initial § 2255 motion.

Section 2255(f)(4) allows the limitation period to run from the date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence. Petitioner's new claims are based on facts that existed and were, or through the exercise of due diligence could have been, known to him at the time his judgment became final. Therefore, this subsection also does not apply and Petitioner's new claims are untimely.[6]

### c. Petitioner's ineffective assistance of counsel claims have no merit.

As noted, Petitioner raises a variety of ineffective assistance of counsel claims in grounds three, four, and five. Because these claims fall outside of the agreed-to waiver and were timely filed, the Court will address them. As demonstrated below, none of Petitioner's ineffective assistance of counsel claims or sub-claims have merit.

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would have

---

[6] Petitioner does not request equitable tolling.

8

not pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

Moreover, where, as here, "a defendant is represented by counsel when making his guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. [T]o rebut that strong presumption of validity, the defendant must make a factual showing that his plea of guilt was not voluntary and intelligent." *United States v. Custis*, 988 F.2d 1355, 1363 (4th Cir. 1993) (citations omitted). "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing Court in accepting a plea constitute a formidable barrier to attacking the plea." *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996) (citations, quote marks omitted). Absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without a hearing, dismiss any § 2255 motion that relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005); *see also United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (finding no prejudice on a claim that defense counsel failed to advise defendant he could be sentenced as a career offender since "if the trial court properly

9

informed Foster of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him").

## **Ground Three**

There are three indictments on the record here. The first was filed on March 28, 2018. (Docket Entry 1.) A superseding indictment was filed on May 1, 2018. (Docket Entry 14.) An additional superseding indictment was filed on May 30, 2018. (Docket Entry 18.) This last indictment, the one that Petitioner pled guilty to in part, charged him with two counts of production of child pornography (Counts One and Four), four counts of enticement of a minor (Counts Two, Three, Five, and Six), one count of receipt of child pornography (Count Seven), and one count of possession of child pornography (Count Eight). (*Id.*) On June 13, 2018, pursuant to a plea agreement, Petitioner plead guilty at arraignment to counts three, six, and eight of the May 30, 2018 superseding indictment. (Docket Entry 54 at 2 ("Next, Your Honor, for guilty plea at arraignment is United States versus Jacobo Rozo Posso.").)

Petitioner now asserts that he was denied effective assistance of counsel because counsel failed "to inform [him about] the superseding indictments," counsel "fraudulently stood in for [his] arraignment on the superseding indictment," and counsel failed to get him arraigned on the superseding indictments. (Docket Entry 44 at pdf pages 13-15; *see also* Docket Entry 45 at 10.) However, to the extent that Petitioner is referencing the May 30, 2018 superseding indictment (Docket Entry 18) to which he pled guilty at arraignment

(Docket Entry 54), his claim is contradicted by the record.[7] The signed plea agreement, which Petitioner read and understood, lists each of the eight counts charged in the May 30 superseding indictment. (Docket Entry 23 at 1, 10; Docket Entry 54 at 13-15.)

More specifically, with Petitioner next to him, during the guilty plea at arraignment, counsel told the Court that he had discussed with Petitioner "in depth" the charges pending against him in the superseding indictment. (Docket Entry 54 at 2.) Petitioner himself told the Court under oath that he received a copy of the "currently pending" superseding indictment, read it with his lawyer, understood the indictment and charges, and fully discussed the charges with his attorney.[8] (*Id.* at 4, 13-14.) Petitioner also indicated that he read the factual basis and that he had no objections to its contents. (*Id.* at 31 referencing Docket Entry 22.) Consequently, to the extent Petitioner now contends otherwise, his claims have no merit.

Moreover, even assuming counsel did err as Petitioner claims (which is not the case), Petitioner has failed to sufficiently articulate how he was prejudiced. He asserts that he was prejudiced and that his constitutional rights were violated but fails to elaborate in any meaningful way. (Docket Entry 45 at 10.) Petitioner's most specific statement regarding

---

[7] To the extent Petitioner is referencing the May 1, 2018 superseding indictment (Docket Entry 14), his claim is also without merit. Petitioner did not plead guilty to the May 1, 2018 superseding indictment and so any claim related to that indictment along the lines Petitioner alleges would fail alone for want of prejudice. The record also reflects that Petitioner was arraigned on both the original indictment and the May 1, 2018 superseding indictment. (Minute Entries 4/9/2018 and 5/15/2018.)

[8] Federal Rule of Criminal Procedure 10 provides that at an arraignment, a court must ensure that the defendant has a copy of the indictment; state to the defendant the substance of the charge; and then ask the defendant to plead to the indictment. Fed. R. Crim. P. 10(a). The Court did each of these things in this case. (Docket Entry 54 at 13-14, 21-23, 28-30.)

prejudice is that his review of the superseding indictments would have alerted him to "the piece mealing [sic] of the indictments and the inaccuracies" thereby preventing a third suspending indictment and the use of inaccurate information. (Docket Entry 44 at pdf page 14.) This statement is too vague and conclusory to warrant any form of relief. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir.1992), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). Petitioner has met neither the "performance" nor the "prejudice" prong of the *Strickland* analysis.[9]

## Ground Four

Next, Petitioner alleges that his attorney erred by failing to file a timely notice of appeal. (Docket Entry 44 at pdf pages 19-20; Docket Entry 45 at 11.) Specifically, in his affidavit, Petitioner states that:

> [s]hortly after I was sentenced.. [sic] on Oct 16, 2018 (Doc 32) while I was in Farmville Regional Jail, I called Mr. Petty via telephone a week after I was sentenced but during the time of the filing of a direct appeal timeframe. I expressed my interest to Mr. Petty that I wanted to appeal because I believed that I was given too much time. Mr. Petty answered that I could not appeal my case, then he said, "well you could but that would be outrageous for any judge to hear that I wanted to appeal my case and that I risked getting more time". This conversation can be verified on the Farmville Regional Jail monitored calls.

(Docket entry 44 at pdf pages 19-20.)

Later in his affidavit, Petitioner raises the issue again:

---

[9] Petitioner filed a second affidavit in response to the Government's brief. (Docket Entry 78.) While it is unclear, Petitioner may tacitly be trying to amend his original § 2255 motion to add a claim that counsel was ineffective for withholding from him one or more plea agreements. (*Id.* at pdf pages 4, 13-14.) Any such motion to amend along these lines would be futile, however, given that this ground is time barred and does not relate back to those grounds raised in the original motion and, beyond this, is conclusory in nature. *Nickerson*, 971 F.2d at 1136.

12

> Nor would any competent counsel fail to timely file an appeal when the Supreme Court has already held many years before that when the client ask for the appeal to be filed, it is the duty of the counsel to file it . . . .

(*Id.* at 22.)

Petitioner's former counsel addresses the assertions of his former client in his affidavit. Counsel states, "Mr. Posso's allegation that he instructed me to file an appeal of sentence is false. At no time did Mr. Posso explicitly tell me to appeal his sentence." (Docket Entry 76, Ex. 1 at 2.) Both Petitioner and his former counsel have provided the Court with audio-recordings of conversations that they had while Petitioner was incarcerated after sentencing and during the appeal period that are pertinent to this issue. (Docket Entry 78 at 2; Docket Entry 79 at 2; Minute Entry 3/3/2021.) The Court has reviewed these audio-recordings. As explained below, rather than support Petitioner's claim, the audio-recordings, in fact, undermine it and demonstrate that it is without merit.

The Supreme Court has held that the dual performance and prejudice inquiry of *Strickland* provides the proper framework for analyzing a claim that counsel was ineffective for failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). A defense attorney's performance falls below an objectively reasonable standard, and is *per se* ineffective assistance of counsel, if he disregards the defendant's "specific instructions" to file a notice of appeal which defendant wants at the time and to which the defendant has a right. *Id.* at 477. Nevertheless, if a defendant neither instructs counsel to file an appeal, nor asks that an appeal not be taken, and if counsel consulted with the defendant about an

13

appeal, counsel performs unreasonably only by failing to follow the defendant's express instructions with respect to an appeal. *See id.* at 478.

An attorney "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480; *see also id.* at 477 (stating that "courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct and judicial scrutiny of counsel's performance must be highly deferential") (internal brackets, citation, and quotation marks omitted). Additionally, "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484; *see also id.* at 486 (holding that evidence the defendant "demonstrated to counsel his interest in an appeal . . . alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal"). The term "consult" in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.

Here, the relevant audio-recordings show that counsel consulted with Petitioner about the advantages and disadvantages of taking an appeal and show further that, after this consultation, Petitioner did not request an appeal and showed no interest in pursuing one.

14

The day after Petitioner's October 16, 2018 sentencing (Minute Entry 10/16/2018), while Petitioner was in the Guilford County jail, counsel explained to Petitioner in a phone call that, while Petitioner could appeal, "it won't go anywhere." (Docket Entry 79 at pdf page 2.)[10] Petitioner responded that he knew that he could appeal, but that he was not sure that he "really want[ed] to." (*Id.*) Counsel said, "I wouldn't do it if I were you." (*Id.*) Petitioner said, "I think the same thing. I think that this is the best, the best option. I think that getting that longer and going through the same process again, I don't, I don't want to risk it." (*Id.*)

Thereafter, on October 21, 2018, it appears that Petitioner's mother texted counsel at night indicating that Petitioner wished to start an appeal and that Petitioner would be calling counsel soon. (Docket Entry 46 at pdf page 6.) Counsel texted back that an appeal was not feasible and that he could speak to Petitioner's mother about this the next day. (*Id.*)

To that end, Petitioner did call counsel and said that he had heard from "people" in Farmville, at Piedmont Regional Jail, "that [he] should appeal [his] case" and that he "changed [his] mind." (Docket Entry 81, Ex. 1 at 3.) Counsel explained to Petitioner that there was "no way" he was going to get his sentence lower. (*Id.*) Counsel explained that this was because of the plea waiver Petitioner agreed to in exchange for the Government not pursuing a production of child pornography charge, which carried a fifteen-year mandatory minimum sentence. (*Id.* at 4.) Counsel explained that the Court did not err at sentencing, there was no viable objection to raise, and that, in fact, the Court's sentence was lower than

---

[10] The audio-recording of this conversation can be found in the physical file. The conversation quoted above (designated P6_5083_70_20181017152658) is contained on a CD provided by Petitioner. Each recording on the CD ends with the date the call was made. The recording described above was made on October 17, 2018.

those recommended by both the Government and probation. (*Id.* at 4-5.) Counsel explained that Petitioner could "try to appeal" but that "it's not going to go anywhere." (*Id.* at 4.) Counsel explained that given the number of images that Petitioner possessed and given that Petitioner "had sex with two 14-year olds," Petitioner could have received twenty-five years to life imprisonment. (*Id.* at 6). Counsel further detailed the nature of the evidence of Petitioner's guilt and explained that "there's no way you are going to get your sentence changed if I file an appeal. It's just not going to happen." (*Id.* at 7.)

Petitioner responded, "Okay. I don't know. I don't really know." (*Id.*) He stated that he had heard of cases like his where the defendant received a nine or twelve year sentence, but admitted that he did not "know the details." (*Id.*) Counsel explained that what made Petitioner's case "so bad" was his "getting with" two minors and again he reiterated that Petitioner had "no chance" of getting his sentence cut. (*Id.* at 8-9.) Counsel stated that if Petitioner wanted him to file an appeal he would "have to do it" but that "[i]t's not going to go anywhere." (*Id.* at 8.) Counsel then asked Petitioner if he understood. (*Id.*) Petitioner said, "I think that you did a great job with" the defense. (*Id.* at 9.) Petitioner stated that he just did not think that the Court "consider[ed] all the things that you are saying in the defense." (*Id.*) Counsel stated that the Court had considered everything at sentencing, and then stated, "Look, you can call me tomorrow and we can talk about it some more. Call me around 5 o'clock tomorrow." (*Id.* at 9.)

The audio-recordings provided to the Court indicate that Petitioner did indeed call counsel again, but did not raise the issue of an appeal anew. (Docket Entry 81 at Ex. 2.)

16

More specifically, Petitioner called counsel and instead said, "I wanted to talk to you about something" and then asked counsel to help him receive substance abuse treatment while in prison. (*Id.* at 2.) Petitioner indicated that he had heard that "they take a year off from your sentence" for taking "the drug class." (*Id.* at 3.) Counsel indicated that the drug treatment program would be made available to Petitioner. (*Id.*) Petitioner also asked counsel to speak to his college to help make sure he could graduate, which counsel agreed he would do. (*Id.* at 4-5.) As the conversation neared an end, Petitioner said, "Yeah. But that's all" that he wanted to speak with counsel about. (*Id.* at 5.) Counsel said, "You call me when you need to, I'll always take your call" and the call ended. (*Id.*)

The record reveals that counsel consulted with Petitioner about the advantages and disadvantages of taking an appeal. The record also reveals that Petitioner did not request that counsel file an appeal. And, given that Petitioner did not mention an appeal in his last phone call with counsel, and given that there were no viable claims to be raised on appeal, there was no reason for counsel to believe that Petitioner sought one. Perhaps realizing that this is fatal to his claim, Petitioner also faults counsel for discouraging him from filing an appeal. In fact, Petitioner tacitly concedes that he did not request an appeal when he faults counsel for "talking [him] out of filing the notice of appeal." (Docket Entry 77 at 13-14.) The fact that counsel accurately pointed out that any appeal had little to no chance of success for the reasons described above does not amount to deficient performance. This ground for relief has no merit and should therefore be denied.

17

**Ground Five**

Petitioner next alleges that his counsel "failed to understand the application of the law and the elements as well as the enhancement applications thus causing the petitioner to be unlawfully convicted as well as unlawfully enhanced." (Docket Entry 45 at 11.) Petitioner states that his counsel "did not understand the actual guidelines enhancements himself and that he relied on a former probation officer, who looked at the guidelines, to determine if the guidelines were correct." (*Id.* at 12.) He also states that counsel "failed to timely object" to the presentence report ("PSR").[11] (Docket Entry 44 at pdf page 18.) None of these challenges has merit.

First, paragraph sixty-four of the PSR contains nine brief summaries of sexually explicit conversations Petitioner had online with purported minors. (Docket Entry 28, ¶ 64.) The PSR labeled the conversations "Offense Behavior Not Part of Relevant Conduct." (*Id.* at page 21.) In his affidavit, Petitioner states that all statements in paragraph sixty-four in the PSR are incorrect, but provides no specifics as to why. (Docket Entry 44 at pdf page 18.) With respect to his argument that his sentence was unlawfully enhanced, Petitioner has provided nothing more than vague, conclusory, and unsupported allegations. *See Nickerson*, 971 F.2d at 1136. Therefore, this sub-claim should be denied.

Second, Petitioner also writes, "I did not agree with [counsel] that I was the blame for everything, because I was on site that required everyone to be 18 yrs or older & was based

---

[11] At sentencing, Petitioner told the Court that he had received a copy of the PSR, that he had reviewed it with counsel, and that he understood its contents. (Docket Entry 55 at 2-3.) Beyond this, even assuming *arguendo* that Petitioner never received or reviewed the entire PSR, he has failed to meaningfully demonstrate how he was prejudiced by this purported and unproven omission.

18

upon the 1st Amendments Freedom of Speech and it was the minors that reached out to me and initiated the conversations and solicitations." (Docket Entry 44 at pdf pages 18-19.) Petitioner claims that, had counsel pursued this line of defense, "it would have proven that the petitioner's counts were factually inaccurate and that he was innocent as charged of the enticement, solicitation [sic] charges because the petitioner did not meet the elements." (*Id.* at 19.) This argument is also without merit.

Title "18 U.S.C. Section 2422(b) [enticement of a minor] comprises four elements: (1) use of a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) a person who is younger than eighteen; (4) to engage in an illegal sexual activity." *United States v. Fugit*, 703 F.3d 248, 254 (4th Cir. 2012) (internal quotation marks omitted). Even assuming that Petitioner's assertions are true, neither the minors using a website in violation of the site's terms of service, nor the minors initiating contact with Petitioner are defenses to the offenses of conviction. Rather, Petitioner's assertions could be characterized as blame shifting and victim blaming. Consequently, Petitioner's counsel was reasonable in advising him against repeating them to the Court at sentencing. Petitioner pled guilty here having been informed of the elements comprising the offenses of conviction, which the uncontested factual basis supported.[12] (Docket Entry 22; Docket Entry 54 at 28-30, 31.) To the extent Petitioner argues to the contrary, his arguments are meritless.

---

[12] Petitioner also asserts that counsel was ineffective in the way counsel handled his psychosexual evaluation. (Docket Entry 78 at pdf pages 9-10.) This argument fails, however, if for no other reason than for want of prejudice.

19

Third, Petitioner further contends that counsel should have objected to the five-level enhancement contained in paragraph forty-eight of the PSR for possessing 600 or more images of child pornography. (Docket Entry 78 at pdf page 12 referencing Docket Entry 28, ¶ 48.) However, there is no reason to believe an objection here would have been sustained in Petitioner's favor. In this case, while Petitioner apparently did not own a Dropbox account, he did receive multiple Dropbox hyperlinks from others, saved them in his iPhone, and sent the hyperlinks to others knowing they accessed child pornography. (Docket Entry 28, ¶¶ 11, 17.) In total, the hyperlinks provided access to 1,329 videos and 782 images of child pornography. (*Id.* ¶ 17) Most of the files depicted the sexual exploitation of 10 to 16 year-old boys, which, when converted to still images, equaled a total of 100,457 images. (*Id.*) The fact that the hyperlinks resolved to child pornography in multiple Dropbox accounts owned by other individuals does not absolve Petitioner of possessing in excess of 600 images. This argument has no merit.

Fourth, Petitioner next contends that counsel should have objected to a four-level enhancement contained in paragraph forty-five of the PSR for an offense involving sadistic or masochistic conduct or exploitation of an infant or toddler. (Docket Entry 78 at pdf page 12 referencing Docket Entry 28, ¶ 45.) Nevertheless, given the evidence in support of this enhancement in the record, there is no reason to believe that an objection along these lines would have been successful. (Docket Entry 28, ¶ 17.) Instead, an objection would have led to the Government providing evidence in support of this conduct to the Court, which would

20

have demonstrated that the enhancement was warranted. (*See id.*) This was unlikely to have helped Petitioner at sentencing.[13]

Fifth, Petitioner also contends that counsel should have objected to the application of a two-level enhancement because the enticement conviction involved a minor who had attained the age of twelve years but not attained the age of sixteen years, because this was already accounted for in the base offense level. (Docket Entry 78 at pdf page 12 referencing Docket Entry 28, ¶ 27.) There is, however, no reason to believe such an objection would have been sustained. The guideline for a violation of 18 U.S.C. § 2422(b) (involving the coercion or enticement of those under the age of eighteen) is U.S.S.G. § 2G1.3. *See* U.S.S.G. § 2G1.3. The base offense level is 28, pursuant to U.S.S.G. § 2G1.3(a)(3). The base offense level therefore generally applies to those convicted of enticing children under the age of eighteen, while the two-level enhancement from that base offense level specifically applies to those offenders who entice or coerce children between the ages of twelve and fifteen, like Petitioner. The Court sees no error here.

Sixth, Petitioner additionally contends that counsel should have objected at sentencing to the two-level enhancement listed in in paragraph twenty-eight of the PSR. (Docket Entry 78 at pdf page 12.) This enhancement was imposed because Petitioner committed a sexual act during the commission of the enticement offense. (Docket Entry 28, ¶ 28.) Petitioner argues that because similar language was used in paragraph twenty-six of the

---

[13] Petitioner may also be faulting counsel for not challenging the enhancement in paragraph forty-four of the PSR at sentencing. (*See* Docket Entry 37.) However, because Petitioner distributed in exchange for valuable consideration (exchanging the Dropbox links containing child pornography), but not for pecuniary gain, the offense level was properly increased by five levels. U.S.S.G. §2G2.2(b)(3)(B). (Docket Entry 28, ¶¶ 8,12, 64, 44.)

PSR, which addressed his base offense level and references a two-level increase, he was impermissibly punished twice for the same conduct. (Docket Entry 78 at pdf page 12.) Although a two-level enhancement for Petitioner's commission of a sex act or sexual contact was listed in both paragraphs twenty-six (which referenced U.S.S.G. §2G1.3(b)(4)(A)) and twenty-eight (which referenced U.S.S.G. §2G2.1(b)(2)(A)) of the PSR, only the enhancement referenced in paragraph twenty-eight was ultimately applied. (Docket Entry 28, ¶¶ 26, 28.) ("USSG §2G2.1 is used to determine the offense level because it results in a higher offense level.") This argument has no merit.

Seventh, Petitioner asserts too that counsel should have objected to the application of the cross-reference listed in paragraph thirty-four of the PSR. (Docket Entry 78 at pdf pages 12-13 referencing Docket Entry 28, ¶ 34.) That language provided that, "The cross reference at USSG §2G1.3(c)(1), directs that if the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, USSG §2G2.1." (*Id.*) There is no reason to believe any objection to the cross-reference in paragraph thirty-four would have been successful, given the evidence that Petitioner solicited and obtained self-produced child pornography from the minor in question (minor-1). (Docket Entry 28, ¶ 8-9, 11.)

22

Finally, with respect to his argument that he was unlawfully convicted made repeatedly throughout his pleadings, Petitioner's claim fails.[14] As explained, Petitioner pled guilty knowingly, intelligently, and voluntarily after a full Rule 11 hearing. (Docket Entry 54.) At that hearing, Petitioner admitted under oath that he was in fact guilty of the charged crimes, which were also supported by a lengthy factual basis that Petitioner had read and to which he had no objections. (*Id.* at 30-31.) Petitioner's arguments to the contrary set forth throughout his pleadings, including his arguments that he did not actually possess child pornography, or that he did not plead guilty knowingly and intelligently and voluntarily, are without merit. His counsel did not err and Petitioner suffered no prejudice. Therefore, this ground for relief and all of its sub-claims, along with all of Petitioner's other grounds for relief, should be denied and dismissed.

## Motion for Reconsideration

On November 14, 2019, the Court denied Petitioner's requests for information concerning the grand jury. (Docket Entry 49.) Petitioner later filed a motion requesting that the Court reconsider its earlier denial of his request. (Docket Entry 51 at 1.) Petitioner now "contends that he has new evidence . . . to demonstrate why he needs . . . the grand jury list detailing the age, race, and gender of each grand juror[.]" (*Id.* at 2.) Petitioner states that he needs this information to determine "if some members that returned the third superseding indictment were not the same members that returned the prior indictments." (*Id.* at 3.) Petitioner seems to be under the mistaken impression that superseding indictments are only

---

[14] Petitioner also faults counsel for failing to conduct discovery. (Docket Entry 44 at pdf page 22.) This argument fails, if for no other reason than for want to prejudice.

legitimate if they are returned by the same grand jury that returned the initial indictment. In any event, nothing in this motion warrants the Court's reversal of its earlier decision to deny Petitioner's request for grand jury information. This motion is denied.

### **"Motion to Dismiss the Government's Request for Extension of Time"**

Petitioner has also filed a motion in which he objects to a request the Government made seeking more time to respond to Petitioner's § 2255 motion. (Docket Entry 56.) Concluding that the Government's request was supported by good cause, the Court granted it. (Docket Entry 53; Minute Entry 1/10/2020.) Since then, the Government has responded to Petitioner's § 2255 motion. (Docket Entries 68 and 76.) Petitioner's motion will therefore be denied as moot.

### **Motion Requesting Evidentiary Hearing**

Petitioner has also filed a motion requesting an evidentiary hearing. (Docket Entry 57.) It is clear from the pleadings, files, and records that Petitioner is not entitled to relief. Consequently, an evidentiary hearing is not warranted in this matter.

### **Motion for the Appointment of Counsel**

Petitioner next requests the appointment of counsel. (Docket Entry 59.) As explained herein, all of Petitioner's grounds for relief are without merit. In light of this, Petitioner has failed to set forth good cause for the appointment of counsel, nor would it be in the interest of justice to appoint counsel under these circumstances. This motion should be denied.

24

## Motion Requesting Unredacted Documents

Petitioner has also filed a motion seeking an unredacted copy of the transcript of one of his arraignments. (Docket Entry 60.) Petitioner also states that his mother is his "acting power of attorney/attorney in fact" and he requests that the Court grant "that any and all records requested by my power of attorney (Erika Posso) be Granted and supplied." (*Id.*) For the following reasons, this motion should be denied.

Under 28 U.S.C. § 753(f), a petitioner proceeding *in forma pauperis* is entitled to a copy of his transcripts at Government expense in a federal habeas proceeding only if he demonstrates that the collateral action is "not frivolous" and that the transcript is "needed to decide the issue" presented in the collateral action. *See* 28 U.S.C. § 753(f); *United States v. MacCollom*, 426 U.S. 317, 320-21 (1976) (noting that § 753(f) contains "a limited grant of authority to the courts to authorize the expenditure of public funds for furnishing transcripts to plaintiffs in § 2255 actions," but only where the court certifies that the claims are "not frivolous" and that the transcript is "needed to decide the issue presented by the suit"); *see also United States v. Parker*, 273 F. App'x 243, 244 (4th Cir. 2008) ("An indigent defendant is entitled to free transcripts from his criminal proceedings only upon a showing of a particularized need for the transcript."); *United States v. Glass*, 317 F.2d 200, 202 (4th Cir. 1963) ("An indigent is not entitled to a transcript at government expense without a showing of the need, merely to comb the record in the hope of discovering some flaw."). Similarly, under 28 U.S.C. § 2250, the Court may direct the Clerk to provide copies of documents or parts of the record at Court expense, but a petitioner must demonstrate a particularized need

25

in relation to the claims he seeks to raise. *See* 28 U.S.C. § 2250; *United States v. Harris*, Crim. No. 06-20131-01-KHV, 2010 WL 604183, at *1 (D. Kan. Feb. 17, 2010) (unpublished) (citing § 2250 as authority for denial of generalized request for transcripts); *Cassidy v. United States*, 304 F. Supp. 864, 867 (W.D. Mo. 1969) (applying § 2250 to a motion under § 2255).

Here, Petitioner has not shown that transcripts or other documents are necessary for him to frame or pursue his claims, none of which warrant relief. This motion is denied.

## "**Motion to Amend the Motion for Reconsideration**"

Petitioner has also filed a motion seeking to amend his motion for reconsideration, discussed above and found to be without merit. (Docket Entry 62.) The Court will permit Petitioner to amend his original motion for reconsideration to add this additional argumentation. However, nothing in this motion warrants the Court's reversal of its earlier decision to deny Petitioner's request for grand jury information.

## **Motion for Audio-Recordings**

Petitioner has also filed a motion asserting that the Government has audio-recordings in its possession of conversations Petitioner had with his prior counsel which it is using to respond to the § 2255 motion. (Docket Entry 63 at 1.) Petitioner asks that the Court order the Government to send these recordings to his mother or step-father, who Petitioner asserts hold his power of attorney, because he cannot receive them while in prison. (*Id.* at 2.) Petitioner indicates that he needs these recordings to determine whether the affidavit provided by his former counsel is consistent with the content of these recordings. (*Id.*)

This motion will be denied for a number of reasons. First, the Government asserts that it does not have the referenced recordings. (Docket Entry 68 at 17 ("To date, with the doctrine of attorney-client privilege in mind, and out of an abundance of caution, the government has not obtained the referenced jail calls.").) Second, Petitioner already has at least some of the relevant audio-recordings he seeks. The Court knows this because after Petitioner filed the instant motion, he also filed a CD containing audio-recordings of conversations between he and counsel recorded while he was in the Guilford County Jail. (Docket Entry 78 at pdf page 2; Docket Entry 79 at pdf page 2.) In fact, Petitioner frequently quotes content from many of these recordings in his pleadings. (*See generally* Docket Entries 77 and 78.) Third, Petitioner also has an accurate transcript of the conversations he had with counsel over the telephone while Petitioner was in Piedmont Regional Jail in Farmville. (Docket Entry 81, Exs. A and B.) In light of all this, it appears that Petitioner already has access to the content he seeks in this motion. The Court will therefore deny it as moot.[15]

### Motion for Transcripts

Petitioner has also filed a "Motion Requesting the Court to Transcribe the Original Attorney-Client Telephone Recordings" (Docket Entry 64.) In it, Petitioner requests that the

---

[15] The undersigned obtained the recordings made at the Piedmont Regional Jail in Farmville from prior counsel and listened to them in camera. (Minute Entry 3/3/21.) The contents of the audio-recordings are identical to the contents of the transcription filed by Petitioner's former counsel under seal and served on Petitioner. (Docket Entry 81 at 3.) Because Petitioner has access to this transcript, and also has access to the recordings made in the Guilford County jail, he has all pertinent recordings (or transcripts thereof) in this case. The only recordings needed to resolve Petitioner's grounds for relief are those related to the alleged failure to file a notice of appeal. All of Petitioner's remaining claims fail without a need to consult any other audio-recordings.

27

Court send him a transcription of all of the audio-recordings in counsel's possession. (*Id.*) As demonstrated above, however, all of Petitioner's grounds and sub-grounds described above fail as a matter of law without the need to consult any audio-recordings or transcripts between Petitioner and his former counsel. The only exception to this is Petitioner's allegation that former counsel failed to file an appeal after being asked to do so. However, as explained above, Petitioner already has access to the content of those recordings and, as further explained above, they demonstrate that Petitioner did not, after consultation, request the filing of an appeal.[16] For these reasons, there is no need to provide Petitioner with any transcripts. The motion will therefore be denied.

### "Motion to Prohibit Non-Party Remote Access"

In this motion, Petitioner asks that the Court enter a protective order preventing non-parties from electronically accessing transcripts of Petitioner's guilty plea and sentencing. (Docket Entry 66.) Federal Rule of Criminal Procedure 49.1(e) permits a court to prohibit third party electronic access to court records for good cause. *See* Fed.R.Crim.P. 49.1(e) ("Protective Orders. For good cause, the court may by order in a case: (1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court."). Petitioner offers no support for his request. This failure does not constitute good cause and so this motion will be denied.

---

[16] Given that Petitioner quotes extensively from audio-recordings made at the Guilford County Jail in his reply brief, it is also clear that he has been able to review and rely upon those recordings. (*See, e.g.*, Docket Entry 77 at 13.)

28

## CONCLUSION

For the reasons set forth above, Petitioner's motion should be denied. An evidentiary hearing is not warranted in this matter, nor is discovery, nor is the appointment of counsel.

**IT IS THEREFORE ORDERED** that Petitioner's motion to amend his § 2255 motion (Docket Entry 44) and motion to amend his motion for reconsideration (Docket Entry 62) both be **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner's amended motion for reconsideration (Docket Entry 51), "Motion to Dismiss the Government's Request for Extension of Time" (Docket Entry 56), motion requesting an evidentiary hearing (Docket Entry 57), motion for the appointment of counsel (Docket Entry 59), motion requesting unredacted documents (Docket Entry 60), motion requesting audio-recordings (Docket Entry 63), motion requesting transcripts (Docket Entry 64), and "Motion to Prohibit Non-Party Remote Access" (Docket Entry 66) all be **DENIED**.

**IT IS RECOMMENDED** that Petitioner's amended and supplemented motion to vacate, set aside or correct sentence (Docket Entry 37) be **DENIED** and that judgment be entered dismissing the action.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
March 23, 2021

29